1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

FREDERICK H. DAWSON,                          NO.  C14-501-BJR-JPD

9                              Plaintiff,

10          v.                                            REPORT AND
                                                          RECOMMENDATION
11   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
12
                             Defendant.
13

14          Plaintiff Frederick H. Dawson appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied his applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be REVERSED and REMANDED.

20                    I.          FACTS AND PROCEDURAL HISTORY

21          At the time of the most recent administrative hearing, plaintiff was a sixty-five year old

22   man with a ninth grade education and no GED.  Administrative Record ("AR") at 47.[1]  His

23   _____

24          [1] Plaintiff was enrolled in special education classes in school.  There is conflicting
     testimony regarding what grade he completed, but during the most recent administrative

REPORT AND RECOMMENDATION - 1

past work experience includes employment as an assistant prep cook, kitchen helper, commercial cleaner, and delivery driver.  AR at 60, 754-55.  He was last gainfully employed on a part-time basis as a commercial cleaner.  AR at 49, 60.  However, his earnings have not risen to the level of gainful activity since his alleged onset date, November 20, 2004.  AR at 316.

Plaintiff filed concurrent applications for DIB and SSI payments on April 26, 2005, based upon his learning disorder, depressive disorder, hepatitis C, and shoulder impairment.  AR at 20, 72, 88.  At the time, he was 56 years old and unrepresented.  After his claims were initially denied, AR at 84, he failed to appeal the case to the hearing level.  Dkt. 14 at 5.

On February 28, 2007, plaintiff again filed concurrent applications, alleging an onset date of November 20, 2004.  AR at 206-14.  Plaintiff asserts that he is disabled due to torn left rotator cuff, heart problems, hypertension, stomach ulcers, depression, insomnia, anxiety, back pain, and high cholesterol.  AR at 206, 211, 233, 709.

In addition to the new evidence plaintiff submitted in support of his applications, the Commissioner reviewed "the evidence used in your previous claim(s) dated 4/26/2005."  AR at 88, 92.  However, the Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 88-95, 97-101.  Plaintiff requested a hearing, which took place on June 21, 2010.  AR at 42-67.  Plaintiff was represented by counsel at that hearing.

On July 30, 2010, the ALJ issued a partially favorable decision finding plaintiff disabled because he met the Listing for a depressive disorder beginning on March 26, 2009.  AR at 16-37.  However, the ALJ found that plaintiff was not disabled before March 26, 2009, and denied benefits based on his finding that before that date, plaintiff could have performed

---

hearing he testified that he completed the ninth grade.  AR at 750.  He has not obtained a GED.  AR at 47, 50, 745-46.

REPORT AND RECOMMENDATION - 2

specific jobs existing in significant numbers in the national economy.  AR at 16-37.  Plaintiff appealed the finding that he was not disabled prior to March 26, 2009 to the Appeals Council, and then to the United States District Court for the Western District of Washington.  AR at 12, 796, 803-16.  The Court issued a Report and Recommendation requiring the Commissioner to (1) address lift/carry restrictions by one of plaintiff's treating physicians, (2) determine the impact of illiteracy on the jobs identified by the vocational expert, and (3) reconsider the reopening of plaintiff's prior claims.  AR at 811-16.  Plaintiff's case was then remanded by the Appeals Council for "further proceedings consistent with the order of the court."  AR at 819.

On November 20, 2013, a second ALJ held a hearing, where plaintiff appeared and testified.  AR at 727-58.  On January 31, 2014, the ALJ denied benefits based on his finding that plaintiff could perform past relevant work as either a kitchen helper or a cook helper between the alleged onset date of November 20, 2004 through March 26, 2009.  AR at 720-21.  The ALJ also declined to open plaintiff's prior application "since I do not find the claimant disabled prior to March 26, 2009..."  AR at 709.  Alternatively, the ALJ found that plaintiff could perform other jobs as outlined by the prior vocational expert at the first administrative hearing, including work as an auto detailer, warehouse worker, and industrial cleaner.  AR at 721. The Appeals Council denied plaintiff's request for review, making the ALJ's January 31, 2014 ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).

On April 9, 2014, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

REPORT AND RECOMMENDATION - 3

1

III.     STANDARD OF REVIEW

2         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

3    social security benefits when the ALJ's findings are based on legal error or not supported by

4    substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

5    Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

6    such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

7    *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

8    (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

9    medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

10   53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

11   whole, it may neither reweigh the evidence nor substitute its judgment for that of the

12   Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

13   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

14   must be upheld. *Id.*

15        The Court may direct an award of benefits where "the record has been fully developed

16   and further administrative proceedings would serve no useful purpose." *McCartey v.*

17   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

18   (9th Cir. 1996)). The Court may find that this occurs when:

19             (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
              claimant's evidence; (2) there are no outstanding issues that must be resolved
20             before a determination of disability can be made; and (3) it is clear from the
              record that the ALJ would be required to find the claimant disabled if he
21             considered the claimant's evidence.

22   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

23   erroneously rejected evidence may be credited when all three elements are met).

24

REPORT AND RECOMMENDATION - 4

IV.     EVALUATING DISABILITY

As the claimant, Mr. Dawson bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments,

_____

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On January 31, 2014, the ALJ issued a decision finding the following:

1.     The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2.     The claimant has not engaged in substantial gainful activity since November 20, 2004, the alleged onset date.

3.     The claimant has the following severe impairments: affect disorder; bilateral rotator cuff injuries; learning disorder; personality disorder; and dementia.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that prior to March 26, 2009, the claimant had the residual functional capacity to perform less than a full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Claimant had the ability to stand/walk 6 hours total in an 8 hour day and sit for 2 hours total in an 8 hour day. The claimant was limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes. The claimant was further limited to no more than occasional interaction with supervisor, co-workers, or the general public.

6.    The claimant was capable of performing past relevant work as a kitchen helper and cook helper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.    The claimant has not been under a disability, as defined in the Social Security Act, from November 20, 2004, through March 25, 2009.

AR at 712-721.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ err by excluding hepatitis and illiteracy limitations from plaintiff's residual functional capacity finding?

2.    Did the ALJ err by failing to credit the opinions of Dr. Maurer and Dr. Victoria McDuffee regarding plaintiff's mental limitations?

3.    Did the ALJ err in finding plaintiff's mental impairments do not meet §12.04(c)(2) of the Listings of Impairments?

4.    Did the ALJ err in relying upon the vocational evidence from the prior hearing?

5.    Did the Commissioner implicitly reopen plaintiff's prior claim, or alternatively, should plaintiff's prior April, 2005 claim be reopened under SSR 91-5p?

6.    Should this case be remanded for a payment of benefits?

Dkt. 14 at 1-2; Dkt. 15 at 1-2.

REPORT AND RECOMMENDATION - 7

VII.   DISCUSSION

A.    The ALJ Reasonably Resolved the Discrepancy Regarding Illiteracy Limitations but Erred by Revisiting Plaintiff's Past Relevant Work on Remand

1.    *Illiteracy*

Plaintiff contends that the ALJ who conducted his second administrative hearing violated the law of the case and contravened the letter and spirit of the Court's January 22, 2013 remand order by excluding limitations from plaintiff's RFC relating to illiteracy and hepatitis C that were found by the first ALJ.  Dkt. 14 at 8-12 (citing AR at 803-16).  With respect to plaintiff's alleged illiteracy, plaintiff argues that the ALJ erred by changing plaintiff's RFC for the relevant period to exclude any reference to illiteracy and the inability to follow simple written instructions, and by concluding that plaintiff could return to his past work or other work.  *Id*. at 8 (citing AR at 715, 720, 813).  Plaintiff asserts that "there was no discussion in the Report and Recommendation regarding changing Mr. Dawson's RFC as it relates to his intellectual deficits.  Instead, the case was remanded to address '[t]he inherent inconsistency between Plaintiff's illiteracy and the DOT job descriptions'" cited by the VE and relied upon by the ALJ.  *Id*. at 9 (citing AR at 815).  Moreover, plaintiff did not challenge the mental RFC findings in the first district court appeal.  Thus, plaintiff argues that "the ALJ must maintain fidelity to the findings from the prior determination."  *Id.*

The Commissioner responds that the law of the case and rule of mandate doctrines did not constrain the second ALJ from reconsidering plaintiff's illiteracy and hepatitis C on remand because the U.S. District Court did not directly pass upon these questions.  The Commissioner asserts that the law of the case doctrine does not reach a matter that was not decided, and therefore "lower courts are free to decide issues on remand so long as they were not decided on a prior appeal."   Dkt. 15 at 4 (citing *Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d

438, 441 (9th Cir. 1982)).  Similarly, the rule of mandate allows a lower court to decide

anything not foreclosed by an appellate mandate.  *Id.* at 5.  The Commissioner argues that here,

the district court "found that illiteracy is inconsistent with performance of occupations at

language level 1 or 2 [AR at 815] but did not reach the merits of whether Plaintiff was in fact

illiterate."  *Id.* at 6.  Even if the law of the case does apply, the Commissioner argues that the

second ALJ permissibly considered the issue because the first ALJ's determination that

plaintiff is "illiterate" was clearly erroneous under the applicable regulations.  *Id.* at 7.

    Under the law of the case doctrine, the decision of an appellate court on a legal issue

must be followed in all subsequent proceedings in the same case.  *See, e.g., United States v.*

*Lewis,* 611 F.3d 1172, 1179 (9th Cir. 2010).  The rule of mandate doctrine is a variant of the

law of the case doctrine.  *Ischay v. Barnhart,* 383 F.Supp.2d 1199, 1214 (C.D. Cal. 2005).

Under the rule of mandate doctrine, a lower court receiving a mandate "'cannot vary it or

examine it for any other purpose than execution.'"  *United States v. Cote,* 51 F.3d 178, 181 (9th

Cir. 1996) (citation omitted).  "The rule of mandate requires that, on remand, the lower court's

actions must be consistent with both the letter *and the spirit* of the higher court's decision."

*Ischay,* 383 F.Supp.2d at 1214 (emphasis in original) (citing *Quern v. Jordan,* 440 U.S. 332,

347 n. 18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).  District courts in the Ninth Circuit and

elsewhere have concluded that both of these doctrines apply with full force to Social Security

cases, and that an ALJ may not exceed or contravene the scope of a district court's remand

order.  *See Wesselius v. Astrue*, 2012 WL 4758067 (W.D. Wash. 2012); *Alamrez v. Astrue,*

2010 WL 3894646 at *3 (C.D. Cal. Sept. 20, 2010).

    However, exceptions to following the law of the case and rule of mandate doctrine also

exist.  For example, the Ninth Circuit has recognized that "[a] Court may have discretion to

depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an

REPORT AND RECOMMENDATION - 9

1    intervening change in the law has occurred; 3) the evidence on remand is substantially

2    different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise

3    result." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).  Moreover, "[l]aw of

4    the case should not be applied woodenly in a way inconsistent with substantial justice." *United*

5    *States v. Miller*, 822 F.2d 828, 832-33 (9th Cir. 1987).

6         As discussed above, the ALJ who conducted plaintiff's first administrative hearing

7    found that plaintiff was "illiterate and is able to communicate in English" and limited plaintiff

8    to "reading only simple words and eliminated his encounter with written instruction."  AR at

9    32, 35.  The VE at the first hearing testified that plaintiff could perform other representative

10   jobs of auto detailer, warehouse worker, and industrial cleaner even though he is "illiterate"

11   because these jobs involved a minimal need to follow written instructions.  AR at 62-64.  For

12   example, the VE testified that the warehouse worker job is "a job that's pretty much explained

13   and told what the person is expected to do.  I've never come across a situation where . . .

14   reading instructions for performing that kind of work."  AR at 64.

15        On appeal, the Court found that the VE's testimony that a person who is illiterate and

16   cannot carry out written instructions but can communicate in English can perform these

17   representative jobs because the job instructions are generally provided orally "may explain

18   why Plaintiff can perform the jobs despite the ALJ's prohibition on written instructions[.]"  AR

19   at 814.  However, "it does not explain how Plaintiff can meet the reading and writing

20   language-skill requirements despite his illiteracy.  Though asked to assume that a hypothetical

21   claimant is illiterate, the vocational expert testified that such a claimant could perform jobs

22   requiring either the ability to 'recognize the meaning of 2,500 (two- or three-syllable) words'

23   and 'read at rate of 95-120 words per minute' (at language level 1), or the ability to 'write

24   compound and complex sentences' and 'read at rate of 190-215 words per minute' (at language

REPORT AND RECOMMENDATION - 10

1    level 2)."  AR at 814-15 (citing DOT 381 687-018, 915.687-034, 922.687-058). The Court

2    found that because the VE did not acknowledge these language-skills requirements of the

3    representative jobs in light of the illiteracy restriction, and yet testified that his testimony was

4    consistent with the DOT, "the inherent inconsistency between Plaintiff's illiteracy and the

5    DOT job descriptions went unexplained and thus requires remand for additional proceedings,

6    and additional vocational testimony if necessary, to address the impact of Plaintiff's illiteracy

7    on his ability to perform representative jobs."  AR at 815 (citing *Pinto*, 249 F.3d at 846-47).

8         As a threshold matter, the Court agrees with the Commissioner that the Court's remand

9    order assumed, but did not decide, that plaintiff was illiterate based upon the first ALJ's

10   findings.  In addition, in light of the Court's direction for an ALJ on remand to resolve the

11   "inherent inconsistency" in the prior findings regarding plaintiff's illiteracy and his ability to

12   perform representative jobs, the second ALJ did not overstep by considering whether plaintiff

13   was, in fact, illiterate under the applicable regulation.  Even if the ALJ's reexamination of this

14   issue fell outside "the letter" of the Court's remand order, it was consistent with "the spirit" of

15   the remand order, and was a reasonable exercise of the ALJ's discretion in order to prevent a

16   manifest injustice.  *See e.g.*, *Ischay,* 383 F.Supp.2d at 1214.  Substantial justice would not be

17   better served by requiring the second ALJ, in carrying out the Court's order to resolve the

18   "inherent discrepancy," to find plaintiff "illiterate" even if plaintiff does not meet the statutory

19   definition.

20        Here, the second ALJ reasonably concluded that plaintiff is not "illiterate," as that term

21   is defined by the SSA.  The Social Security Administration has identified five categories of

22   education: illiteracy, marginal education, limited education, high school education and above,

23   and inability to communicate in English.  20 C.F.R. § 404.1564, 416.964.  A person is illiterate

24   "if the person cannot read or write a simple message such as instructions or inventory lists even

REPORT AND RECOMMENDATION - 11

though the person can sign his or her name.  Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1).  A person has a marginal education if he has the "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs.  We generally consider that formal schooling at a 6th grades level or less is a marginal education." 20 C.F.R. § 404.1564(b)(2), 416.964(b)(2).  A "[l]imited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs.  We generally consider that a 7th grade through the 11th grade level of formal education is a limited education."  20 C.F.R. § 404.1564(b)(3), 416.964(b)(3).

Plaintiff attended high school through the ninth grade, suggesting that plaintiff has a "limited education" pursuant to 20 C.F.R. § 404.1564(b)(3), 416.964(b)(3).  However, even if plaintiff's psychological test results from February 2005 are giving more weight than his years of formal schooling, plaintiff still meets the definition of at least a marginal education because his results showed that he can read and pronounce words at the fourth grade level, spell words at the fourth grade level, and solve written arithmetic problems at the fifth grade level.  AR at 301.  Indeed, the record reflects that plaintiff can do more than merely sign his name.

In the most recent decision, the second ALJ concluded that "while the claimant alleges that he is illiterate, the evidence supports greater educational abilities than alleged."  AR at 716.  The ALJ noted that plaintiff has been able to fill out a doctor's pre-appointment form in December 2005 (AR at 305), job applications (AR at 407), his written driver's test (AR at 747), and written psychological testing (AR at 696).  AR at 716.  He also completed a function report.  AR at 251.  The ALJ also noted that during the period at issue, plaintiff "performed work classified below as a delivery driver, which has a GED reasoning level of 3, math level or

2, and language level of 3 . . . further suggest[ing] that the claimant has greater reading and writing abilities than alleged."  AR at 716-17.  *See* 20 C.F.R. § 404.1564(a), 416.964(a) ("Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education.").

Thus, the ALJ did not err by considering as a threshold matter whether plaintiff's claims that he is illiterate were supported by the record.  Upon determining that plaintiff has greater reading and writing abilities than alleged, the ALJ did not err by excluding illiteracy from plaintiff's RFC.

### 2.     *Hepatitis*

As discussed above, the ALJ who conducted plaintiff's first administrative hearing found that plaintiff was unable to perform his past relevant work as a kitchen helper or prep cook because he has workplace environmental limitations as a result of his Hepatitis C.  AR at 35.  Specifically, the ALJ found that "due to the claimant's history of substance abuse, the claimant was limited to occupations which did not involve the handling, sale, or preparation of food/alcoholic beverages or access to narcotic drugs[.]"  AR at 770.  During the first administrative hearing, the ALJ explained that "what we're trying to control for is cross contamination due to hepatitis C and some of those issues . . . I don't even think he's going to be [able] to get a food license . . . with that sort of issue."  AR at 61.  The vocational expert agreed, stating "I think you're right.  With the hep C, yeah."  AR at 62.  As a result, the ALJ found that plaintiff's previous work as a kitchen helper or prep cook were precluded.  AR at 770.

Plaintiff argues that the second ALJ erred by finding that plaintiff's hepatitis C was no longer an issue, and therefore plaintiff could return to his prior work as a kitchen helper and cook helper at step four. Dkt. 14 at 11.  Plaintiff points out that although the ALJ "seems to

REPORT AND RECOMMENDATION - 13

have discounted the hepatitis [C] impairment because by 2010, with [interferon] treatment, it

was in remission . . . the fact that his hepatitis was not resolved until 2010 is not probative of

disability between his onset date of November 20, 2004 and March 25, 2009." *Id*. at 11-12.[3]

Plaintiff further argues that the ALJ's "new findings regarding . . . hepatitis fall beyond the

scope of review in the remand order." *Id*.

The Commissioner responds that "aside from acknowledging [the ALJ's] finding that

hepatitis C constituted a severe impairment [AR at 808], the district court did not address the

hepatitis C or any associated limitations." Dkt. 15 at 6.  Thus, "because the district court did

not squarely address . . . his hepatitis, [the] ALJ [] was not precluded from reassessing these

issues." *Id*.  Even if plaintiff's hepatitis was the subject of the law of the case doctrine, the

Commissioner argues that the first ALJ's assessment of food service limitations was clearly

erroneous and therefore falls under an exception.  *Id*. at 7.  The Commissioner asserts that "as

Plaintiff himself notes, hepatitis C is not generally transmitted by food handling . . .

Accordingly, [the first ALJ's] inclusion of food handling limitations in his RFC related to

Plaintiff's hepatitis C was clearly erroneous and, accordingly, departure from the former

assessment was appropriate." *Id*. at 8.

The Commissioner's arguments regarding plaintiff's hepatitis are unpersuasive.  As

discussed above, although the second ALJ permissibly revisited plaintiff's allegations of

illiteracy due to the Court's remand order, which directed him to resolve the discrepancy in the

prior ALJ's findings regarding the issue, there was no similar instruction by the Court for the

---

[3] Plaintiff notes that his hepatitis A and B were also deemed cleared on April 23, 2009, AR at 523-24, and "parenthetically, among the different types of hepatitis, it is hepatitis A that can be transmitted by food handling; hepatitis B and C are transmitted, generally, via blood-to-blood contact." Dkt. 14 at 12.  The ALJ, however, did not advance this analysis in rejecting the prior workplace environment restriction regarding plaintiff's hepatitis.  *Id*. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (holding that the court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").

REPORT AND RECOMMENDATION - 14

second ALJ to reconsider plaintiff's hepatitis and the resulting food handling limitations in the RFC. The remand order also did not throw open the door for a reassessment of RFC made between steps three and four.[4] *See, e.g., Ruiz v. Apfel*, 24 F.Supp.2d 1045, 1050 (C.D. Cal. 1998) (remanding for further administrative proceedings where the remand order "makes it very plain that the remand was for a limited purpose," and there was "no basis for the ALJ to review issues that had been determined in plaintiff's favor" and not appealed). The Court expressly limited the scope of review on remand, and food handling limitations – and the ALJ's related step four findings - did not fall within the scope of the remand order. Thus, the second ALJ ran afoul of the law of the case and rule of mandate doctrines by increasing plaintiff's RFC to eliminate these environmental limitations relating to handling, sale or preparation of food, (AR at 770), and finding that plaintiff could return to his prior work as a kitchen helper and cook helper at step four. AR at 720.

Finally, as plaintiff points out, even though his hepatitis C was cleared with interferon treatments in 2010, (AR at 648), and his hepatitis A and B were deemed cleared on April 23, 2009, (AR at 523-24), these facts are not probative of disability between plaintiff's alleged onset date of November 20, 2004 and March 25, 2009. The fact that plaintiff's hepatitis cleared during the time period when plaintiff has already been found disabled is irrelevant to a determination of whether plaintiff could have performed his past relevant work as a kitchen helper or cook helper between November 20, 2004 and March 25, 2009, when he still had hepatitis.

The ALJ therefore committed legal error. *See Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989) ("Where a court finds that the Secretary has committed a legal or factual error in

---

[4] The workplace environmental limitation related to food handling in the first ALJ's RFC finding was not contested on appeal to the district court. AR at 770.

REPORT AND RECOMMENDATION - 15

1    evaluating a particular claim, the district court's remand order will often include detailed

2    instructions concerning the scope of the remand, the evidence to be adduced, and the legal or

3    factual issues to be addressed.  Deviation from the court's remand order in the subsequent

4    administrative proceedings is itself legal error, subject to reversal on further judicial review.").

5    As discussed below, this case is being reversed and remanded for further administrative

6    proceedings to correct other errors with respect to the ALJ's evaluation of the medical opinion

7    evidence.  On remand, the ALJ should adopt the first ALJ's findings with respect to plaintiff's

8    workplace limitations stemming from his hepatitis, and should not revisit the first ALJ's

9    findings at step four.

         B.    The ALJ Erred in Evaluating the Opinions of Dr. Maurer and Dr. McDuffee
10             Regarding Plaintiff's Mental Limitations

11             1.    Standards for Reviewing Medical Evidence

12       As a matter of law, more weight is given to a treating physician's opinion than to that

13   of a non-treating physician because a treating physician "is employed to cure and has a greater

14   opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

15   747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

16   physician's opinion, however, is not necessarily conclusive as to either a physical condition or

17   the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

18   *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

19   physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

20   contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

21   157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

22   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

23   making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

24

1    merely state his/her conclusions.  "He must set forth his own interpretations and explain why

2    they, rather than the doctors', are correct."  *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

3    (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.

4    *Reddick*, 157 F.3d at 725.

5         The opinions of examining physicians are to be given more weight than non-examining

6    physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the

7    uncontradicted opinions of examining physicians may not be rejected without clear and

8    convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

9    physician only by providing specific and legitimate reasons that are supported by the record.

10   *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

11        Opinions from non-examining medical sources are to be given less weight than treating

12   or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

13   opinions from such sources and may not simply ignore them.  In other words, an ALJ must

14   evaluate the opinion of a non-examining source and explain the weight given to it.  Social

15   Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

16   more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

17   non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

18   consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

19   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

20             2.    *Dr. Maurer*

21        Charles Maurer, Ph.D., performed a psychological evaluation of plaintiff in February

22   2005 to determine plaintiff's eligibility for services through the Division of Vocational

23   Rehabilitation ("DVR") with Washington's Department of Social and Health Services

24   ("DSHS").  AR at 299-303.  Dr. Maurer concluded that plaintiff had significant difficulties in

1  communicating, and diagnosed a reading, writing and math disorder.  He found that plaintiff

2  would require "more supervision and training than others." AR at 303.  He opined that plaintiff

3  "most probably requires fairly close supervision."  AR at 303.

4       The ALJ summarized Dr. Maurer's opinion, stating that Dr. Maurer "opined that the

5  claimant has some problems with work skills that are most likely a reflection of his cognitive

6  issues," and that he assessed a GAF score of 50.[5]  AR at 718.  The ALJ gave Dr. Maurer's

7  opinion "some weight . . . because the claimant does have some functional limitations due to

8  his cognitive difficulties.  However, Dr. Maurer does not specify to what extent the claimant

9  would be limited."  AR at 718.

10       Plaintiff contends that the ALJ erred by rejecting Dr. Maurer's opinion, which "is

11  supported by the other mental health evaluations in the record and stands in direct conflict with

12  [the ALJ's] finding that Mr. Dawson is to have 'no more than occasional interaction with

13  supervisors.'" Dkt. 14 at 13 (citing AR at 715).  Plaintiff points out that a need for "close

14  supervision" in the work setting is a significant limitation, but the ALJ failed to provide any

15  reason for failing to include this limitation in plaintiff's RFC assessment.  Id. at 14.

16       The Commissioner "concedes that the ALJ erred in not addressing Dr. Maurer's

17  specific limitation of close supervision."  Dkt. 15 at 9.  However, the Commissioner asserts

18  that the ALJ's failure to address this favorable evidence was harmless because the ALJ gave

19

20       [5] The GAF score is a subjective determination based on a scale of 1 to 100 of "the
clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC

21  ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).
A GAF score falls within a particular 10-point range if either the symptom severity or the level

22  of functioning falls within the range.  Id. at 32.  For example, a GAF score of 51-60 indicates
"moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty

23  in social or occupational functioning."  Id. at 34.  A GAF score of 41-50 indicates "[s]erious
symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment

24  in social, occupational, or school functioning," such as the lack of friends and/or the inability
to keep a job.  Id.

REPORT AND RECOMMENDATION - 18

1   valid reasons for rejecting similar evidence or allegations, and the ALJ's reasoning is

2   applicable to the unaddressed evidence.  *Id.* at 10 (citing *Molina*, 674 F.3d at 1117).

3   Specifically, the Commissioner argues that Dr. Maurer's limitation regarding close supervision

4   was already rejected by the first ALJ in rejecting Thomas Carollo, M.D.'s assessment that

5   plaintiff required additional supervision, because plaintiff had demonstrated the ability to

6   participate in Dr. Carollo's assessment without need for "redirection."  *Id.* (citing AR at 30).

7   The first ALJ's assessment of Dr. Carollo's opinion was not disturbed by the district court, and

8   on remand, the second ALJ incorporated the first ALJ's discussion and summary of the

9   evidence.  AR at 709.  Thus, the Commissioner asserts that "by incorporation, [the second]

10  ALJ has already rejected an additional-supervision limitation."  Dkt. 15 at 10.

11       Plaintiff responds that "a limitation to jobs that require close supervision would

12  profoundly erode Plaintiff's occupational base and is not harmless."  Dkt. 16 at 6.  Plaintiff

13  argues that there is no basis for rejecting the opinion of a treating or examining source by

14  incorporation, and that specific and legitimate reasons are instead required.  *Id.* at 7.  Plaintiff

15  points out that the ALJ rejected Dr. Carollo's opinion specifically because he found evidence

16  that plaintiff could be "redirected" during the one-time examination, (AR at 719), and "the

17  ability to be re-directed implies the need for supervision.  Dr. Carollo obviously factored in

18  Plaintiff's ability to be re-directed when he opined that [plaintiff] would require such

19  supervision."  Dkt. 16 at 7.

20       In summarizing Dr. Carollo's psychological consultative examination from June 2007,

21  the first ALJ noted Dr. Carollo's comment that plaintiff "could have difficulty interacting with

22  co-workers and the public, but *should not have problems accepting instructions from*

23  *supervisors*.  Dr. Carollo further opined the claimant would have difficulty performing

24  activities on a consistent basis *without additional supervision* given his difficulty with

1    concentration during the assessment." AR at 30 (emphasis added). The ALJ found that Dr.

2    Carollo's opinions were inconsistent with plaintiff's performance during the evaluation, as

3    plaintiff was able to participate in the assessment without the need for redirection, which "is

4    inconsistent with [Dr. Carollo's] ultimate opinion that the claimant would require additional

5    supervision." AR at 30. The second ALJ incorporated these findings into his opinion. AR at

6    719.

7           The Court is not persuaded by the Commissioner's argument that the ALJ's reasons for

8    rejecting Dr. Carollo's opinion are equally applicable to Dr. Maurer's opinion that plaintiff

9    requires "fairly close supervision" on the job as well as more "training than others." AR at

10   302. As discussed above, Dr. Carollo opined that plaintiff had "difficulties in concentration

11   during the intellectual functioning and sensorium assessment, but was otherwise able to

12   participate in the assessment without the need for redirection, albeit at a somewhat slow pace."

13   AR at 420. Because plaintiff was able to participate in the assessment without "redirection" by

14   Dr. Carollo, the ALJ rejected Dr. Carollo's "inconsistent" opinions that plaintiff's "psychiatric

15   condition should not prevent him from accepting instructions from supervisors" and plaintiff's

16   limitations in concentration would make it difficult to perform activities consistently "without

17   additional supervision." AR at 421. The ALJ therefore rejected Dr. Carollo's opinion based

18   upon what he perceived to be an internal inconsistency. Dr. Maurer's opinion, on the other

19   hand, suffers no such flaw. Moreover, the Court notes that it seems extremely plausible that a

20   person with severe difficulties in concentration would require additional, rather than

21   occasional, supervision in the workplace.

22          Accordingly, the first ALJ's treatment of Dr. Carollo's opinion does not render the

23   second ALJ's error in evaluating Dr. Maurer's opinion harmless. Because a requirement of

24   "close supervision" would erode the occupational base, this case must be reversed and

REPORT AND RECOMMENDATION - 20

1    remanded for further administrative proceedings.  On remand, the ALJ shall re-evaluate the

2    opinions of both Dr. Carollo and Dr. Maurer, including whether plaintiff's mental limitations

3    would have necessitated "additional supervision" in the workplace during the relevant period.

4         3.    *Dr. Victoria McDuffee*

5         Plaintiff argues that the ALJ erred in evaluating the psychological evaluation conducted

6    by Dr. Victoria McDuffee on May 17, 2010.  Dkt. 14 at 15 (citing AR at 689-703).  The ALJ

7    credited Dr. McDuffee's assessment of plaintiff's IQ scores.  AR at 715.  However, the ALJ

8    failed to evaluate Dr. McDuffee's conclusion that plaintiff had a GAF score of 35 and has a

9    significant limitation in processing speed.  Dkt. 14 at 16.[6]  Plaintiff asserts that these errors

10   were not harmless, because if the ALJ had adopted Dr. McDuffee's conclusion regarding

11   plaintiff's processing speed the ALJ's ultimate decision as to disability would have been

12   different.  *Id*. at 18.

13        The Commissioner responds that "because Dr. McDuffee's evaluation is not probative

14   of Plaintiff's functioning during the relevant period, the ALJ did not err."  Dkt. 15 at 10.

15   Specifically, the Commissioner points out that the relevant period was from November 20,

16   2004 through March 25, 2009, and plaintiff had already been found disabled long before Dr.

17   McDuffee's May 17, 2010 psychological evaluation.  *Id*. at 11.  Although plaintiff quotes

18   language from Dr. McDuffee's report that plaintiff's "issues appear pervasive and began in

19   early childhood," (AR at 702), the Commissioner contends that "Dr. McDuffee did not offer

20   her March 2010 evaluation as a retrospective analysis of Plaintiff's limitations between

21   November 20, 2004 and March 25, 2009.  In fact, Dr. McDuffee expressly noted that

22   Plaintiff's cognitive functioning has not been consistent and, in fact, has worsened over time

23   ────────────────
          [6] A GAF score of 31-40 indicates "some impairment in reality testing and
24   communication" or "major impairment in several areas, such as work or school, family
     relations, judgment, thinking or mood."

REPORT AND RECOMMENDATION - 21

1  because of his regular drug and alcohol use." *Id.* (citing AR at 702).[7]  Finally, the

2  Commissioner asserts that neither plaintiff's GAF score nor processing speed are

3  representative of plaintiff over a retrospective period of five a half years.  Dkt. 15 at 11.  The

4  Commissioner asserts that the ALJ must only "explain why significant probative evidence has

5  been rejected," and Dr. McDuffee's opinion was not probative because it was issued fifteen

6  months after the last day of the relevant period, and Dr. McDuffee acknowledged that

7  plaintiff's presentation on that date was not representative of plaintiff over time.  *Id*. at 13.

8        Plaintiff responds that "the Commissioner cannot both credit Dr. McDuffee's opinion

9  that serves as a foundation for the ALJ IQ determination yet reject the findings as 'not

10  significant probative evidence.'"  Dkt. 16 at 8.  Plaintiff also points out that "processing speed"

11  is a component of the performance score in the WAIS III intellectual test, and that Dr.

12  McDuffee specifically noted the validity of her testing.  *Id*. at 7 (citing AR at 698).

13       Although the Court notes that GAF scores can and often do change over time,

14  plaintiff's other points regarding the ALJ's treatment of Dr. McDuffee's opinion are well

15  taken.[8]  The ALJ, on the one hand, relies upon Dr. McDuffee's opinion regarding plaintiff's IQ

16  scores but, on the other hand, fails to discuss other significant and probative evidence from Dr.

17  McDuffee's opinion which also presumably does not change over time, such as test results

18  reflecting plaintiff's processing speed.  AR at 698-99.  Dr. McDuffee also discussed plaintiff's

19  mental health history and history of substance abuse, but opined that plaintiff's

---

20      [7] As the ALJ noted, plaintiff used drugs and alcohol during the relevant period.  AR at
21  702.  Progress notes from Community Psychiatric acknowledge alcohol dependence and abuse
    in September 2006 and March 2007.  AR at 97, 396.  In February 2009, plaintiff was arrested
22  for driving under the influence, and acknowledged intermittent alcohol use for the seven
    months prior to his arrest.  AR at 455.
23      [8] Plaintiff notes that he "is not relying upon Dr. McDuffee's sole [GAF] score of 35 to
    establish disability.  The longitudinal record provides substantial evidence that Plaintiff's
    mental impairments have been severe over the years."  Dkt. 16 at 9 (citing AR at 302, 305,
24  420, 488, 601, 692, 702).

REPORT AND RECOMMENDATION - 22

1  biopsychosocial, cognitive, and behavioral problems appear to have originated during his

2  childhood:

> Mr. Dawson's combination of biopsychosocial problems suggests his ability to
> sustain employment in a consistent and reliable manner is unlikely. *He appears*
> *to be borderline intellectual functioning which seems consistent with his history.*
> He has frequently made poor decisions in an effort to sustain himself over the
> years which resulted in over 30 times arrested and incarcerated.  He has further
> reduced [h]is cognitive functioning abilities by using drugs and alcohol regularly
> over the years.  His anxiety and depressive symptoms also contribute an element
> of cognitive impairment, difficulty concentrating and sustaining focus.
> Behaviorally he has a history of impulsivity, risk taking, difficulty with authority,
> and relationship problems.  *These issues appear pervasive and began in early*
> *childhood.*

9  AR at 702.  Thus, Dr. McDuffee was clearly aware of plaintiff's drug and alcohol use

10  during the relevant period, but nevertheless opined that plaintiff's issues began much

11  earlier.  AR at 702.  Finally, as plaintiff points out, the first ALJ credited Dr. McDuffee's

12  opinion, and relied upon it to find plaintiff disabled as of March 26, 2009.  AR at 36

13  (citing Dr. McDuffee's opinion).

14      Accordingly, on remand, the ALJ shall discuss Dr. McDuffee's opinion.  In

15  particular, the ALJ should discuss whether Dr. McDuffee's test results and findings

16  regarding plaintiff's limited processing speed are probative of plaintiff's functioning

17  during the relevant period.

18      C.      On Remand, the ALJ Should Also Consider Whether Plaintiff's Mental
                Impairments Meet §12.04(c)(2) of the Listings of Impairments

19

20  Plaintiff further argues that based in part upon Dr. McDuffee's opinion, he was found

20  disabled after March 26, 2009 pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing §

21  12.04(C)(2) ("Listing § 12.04").[9]  Plaintiff contends that Dr. McDuffee's evaluation supports a

22

23

24      [9] To establish disability under Listing 12.04(C)(2), a claimant must demonstrate the
following:

REPORT AND RECOMMENDATION - 23

1   finding that plaintiff had "a residual disease process that has resulted in such marginal

2   adjustment that even a minimal increase in mental demands or change in the environment

3   would be predicted to cause the individual to decompensate" even prior to that time.  Dkt. 14 at

4   18.  Plaintiff asserts that "Dr. McDuffee noted [plaintiff] was having marked limitations in

5   maintaining concentration, persistence and pace due to his lifelong learning disability and

6   major depressive disorder.  His mental impairments are a chronic condition despite long time

7   abstinence from illegal substance and ongoing treatment."  *Id.* at 19 (citing AR at 692, 694).

8          The Commissioner's position, as discussed above, is that Dr. McDuffee's opinion is not

9   probative of plaintiff's functioning during the relevant period between November 20, 2004 and

10  March 25, 2009.  Dkt. 15 at 14.  Furthermore, the Commissioner asserts that Dr. McDuffee's

11  opinion does not specifically predict that plaintiff will "decompensate" as a result of even a

12  minimal increase in mental demands or a change in environment.  *Id.*

13         As discussed above, on remand the ALJ is directed to evaluate and discuss Dr.

14  McDuffee's opinion as it relates to plaintiff's functioning during the relevant period.  As part

15  of this discussion, the ALJ should discuss whether plaintiff satisfied Listing 12.04 during the

16  relevant period.  The ALJ should obtain testimony from a medical expert to aid in this

17  determination, if necessary.

18

19

20

---

      C.      Medically documented history of a chronic affective disorder of at least 2 years'
21             duration that has caused more than a minimal limitation of ability to do basic
            work activities, with symptoms or signs currently attenuated by medication or
22             psychosocial support, and . . .

23       2.      A residual disease process that has resulted in such marginal adjustment that
            even a minimal increase in mental demands or change in the environment would
24             be predicted to cause the individual to decompensate[.]

REPORT AND RECOMMENDATION - 24

D.     If Necessary, the ALJ Should Obtain New Vocational Evidence

Plaintiff argues that the second ALJ erred by relying upon the testimony of the vocational expert from plaintiff's first hearing, even though the ALJ removed illiteracy from his RFC finding and also did not include limitations related to processing speed pursuant to Dr. McDuffee's opinion.  Dkt. 14 at 19-20.  Thus, plaintiff contends that the ALJ never actually obtained an explanation of "how Plaintiff can meet the reading and writing language-skill requirements despite his illiteracy," even though that was the central question regarding the remand in this case.  *Id*.  The Commissioner responds that "because the RFC and hypothetical questions contained only credible limitations supported by the records evidence, the ALJ did not err."  Dkt. 15 at 14.

Because this matter is remanded for additional proceedings and could result in a different disability determination, it is unnecessary to determine whether the ALJ committed further errors.  However, if the ALJ reaches step five of the sequential evaluation process on remand, the ALJ should solicit new testimony from a vocational expert, and not simply rely upon vocational evidence from past hearings.  In addition, the ALJ should reconsider whether reopening the prior application from 2005 when plaintiff was unrepresented is appropriate under SSR 91-5p or would otherwise benefit plaintiff.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 5, 2015**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be

noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 9, 2015**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 22nd day of December, 2014.

*James P. Donohue*

_____
JAMES P. DONOHUE
United States Magistrate Judge